U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 1 7 2013

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 4:13-CV-180-A |
| | § | (NO. 4:10-CR-099-A-1) |
| DAVID BAROUCH | § | |
| | § | |

MEMORANDUM OPINION
and
ORDER

Came on to be considered the motion of David Barouch

("movant") pursuant to 28 U.S.C. § 2255 to vacate, set aside, or

correct sentence. Having reviewed the motion, movant's

memorandum, movant's motion to admit exhibits,[1] the record, the

government's response, movant's reply, and applicable legal

authorities, the court concludes that none of the grounds has

merit and the motion should be denied. Movant also filed a

motion for evidentiary hearing, motion for discovery, and motion

to appoint counsel, all of which should be denied.

I.

Background

Movant pleaded guilty, without a plea agreement, to

possession of an unregistered destructive device, in violation of

---

[1] Movant's motion to admit exhibits A, B, B1, C, D, and D1, filed on March 26, 2013, is granted to the extent that the court has considered the exhibits in its analysis of movant's § 2255 motion.

26 U.S.C. §§ 5841, 5861(d), and 5871, resulting from his conduct in constructing an improvised explosive device, placing the device in a Federal Express box addressed to movant's ex-wife, and leaving the box on his ex-wife's front porch when he knew she would be home alone.  Movant's calculated guideline range for sentencing was 210 to 262 months imprisonment, but the statutory maximum capped his sentence at 120 months.  U.S. Sentencing Guidelines Manual § 5G1.1(a).  At movant's sentencing hearing, the court noted:

> The advisory guideline range is 120 months.  It's that only because of the statutory maximum.  Were it not for the statutory maximum, the range would be over 20 -- well, 210 months to 262 months.  So, in a sense, the defendant's already gained a significant advantage in the sentencing process by the charging the offense with which he was charged.
>
> I think a sentence of anything less than 120 months would grossly underestimate and underrepresent the kind of punishment that should be imposed for the conduct the defendant's engaged in.  If an 18 United States Code Section 3553(a) analysis were to be made, an appropriate sentence would be significantly greater than 120 months.

Sentencing Tr. at 46.  Movant's conviction and sentence were affirmed on appeal, United States v. Barouch, 464 F. App'x 254 (5th Cir. 2012), and movant did not seek certiorari review. Movant timely filed his motion under § 2255.

## II.

## Grounds of the Motion

Movant identified four grounds for relief in his motion: (1) that his guilty plea was not made knowingly, voluntarily, and intelligently; (2) his conviction was obtained by the prosecution's failure to disclose evidence favorable to movant; and (3) counsel was ineffective prior to and during his rearraignment hearing; and (4) counsel was ineffective prior to and during his sentencing proceedings.[2]

## III.

## Analysis

A.   Legal Standard for 28 U.S.C. § 2255

After conviction and exhaustion, or waiver, of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. United States v. Frady, 456 U.S. 152, 164 (1982); United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), cert. denied, 502 U.S. 1076 (1992). A defendant can challenge her conviction or sentence after it is presumed final on issues of constitutional or jurisdictional magnitude only, and may not raise an issue for the first time on collateral review without showing both "cause" for her procedural default

---

[2] Movant raises numerous claims within his two grounds alleging ineffective assistance of counsel, which are addressed infra, section III.D.

3

and "actual prejudice" resulting from the errors.  <u>Shaid</u>, 937 F.2d at 232.

Section 2255 does not offer recourse to all who suffer trial errors.  It is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  <u>United States v. Capua</u>, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981).  In other words, a writ of habeas corpus will not be allowed to do service for an appeal.  <u>Davis v. United States</u>, 417 U.S. 333, 345 (1974).  Further, if issues "are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack."  <u>Moore v. United States</u>, 598 F.2d 439, 441 (5th Cir. 1979) (citing <u>Buckelew v. United States</u>, 575 F.2d 515, 517-18 (5th Cir. 1978)).

B.   <u>Claim that Plea Was not Knowing, Voluntary, and Intelligent</u>

For a guilty plea to be knowing and voluntary, the defendant must have "a full understanding of what the plea connotes and of its consequence."  <u>United States v. Hernandez</u>, 234 F.3d 252, 255 (5th Cir. 2000) (per curiam) (internal quotations and citations omitted).  However, "[t]he defendant need only understand the direct consequences of the plea; he need not be made aware every consequence that, absent a plea of guilty, would not otherwise

4

occur." Id. (internal citations omitted). The defendant's
representations, as well as those of his lawyer and the
prosecutor, and any findings by the judge in accepting the plea,
"constitute a formidable barrier in any subsequent collateral
proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977).
Solemn declarations in open court carry a strong presumption of
truthfulness, and a defendant bears a heavy burden to show that
the plea was involuntary after testifying to its voluntariness in
open court. DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir.
1994). When considering challenges to guilty pleas, the Fifth
Circuit "ha[s] focused on three core concerns: absence of
coercion, the defendant's understanding of the charges, and a
realistic understanding of the consequences of a guilty plea."
United States v. Gracia, 983 F.2d 625, 627-28 (5th Cir. 1993).

Movant contends that he was led to believe that "he would
receive 5K1.1 treatment for substantial assistance prior to
sentencing" and that the government "breached its express
agreement" and failed to inform the court of the alleged
substantial assistance. Mot. at 6. Movant also contends that
his attorney "emphatically" told him that he would only receive a
six-year sentence if he entered a guilty plea, but would receive
ten years if he chose to go to trial. Id. Finally, movant
alleges that neither his attorney nor the court explained what

constitutional rights movant was giving up "concerning representation at sentencing," and that no one explained what "supervised release" meant.  Id. at 6-7.

While movant was in jail between his rearraignment and his sentencing, he alleges that he was able to obtain a confession from a fellow inmate, Eddie Sutton ("Sutton") for murder, and was able to obtain details surrounding the murder that led to Sutton's conviction for murder, by paying $20,000.00 to Sutton's daughter.  Movant also alleges that he and his attorney met with ATF Agent Riddle ("Agent Riddle"), movant provided the information, and Agent Riddle assured movant that the government would move for a sentencing reduction for movant based on movant's substantial assistance.  Movant alleges that this promise by Agent Riddle was one reason movant decided to plead guilty.

Movant's contentions regarding his plea are contradicted by the record, which shows that movant's guilty plea was knowing, voluntary, and intelligent.  First, his claim that the government breached an agreement to move for a reduction of sentence based on substantial assistance was already rejected on movant's direct appeal by the Fifth Circuit, which explained that movant failed to meet his burden of proving by a preponderance of the evidence any facts establishing a breach.  In addition, movant does not

allege that the agreement even existed until after he had entered his guilty plea.  Movant claims to have obtained Sutton's confession on October 6, 2010, and then claims to have met with an ATF agent several weeks later to provide evidence of the confession to the government.  However, movant pleaded guilty on July 7, 2010, and could not have had any agreement in place with the government for an event that had not yet taken place.  Thus, he could not have been induced to plead guilty at that time based on his later assistance to the government.

Movant's claims that his attorney told him he would only be sentenced to six years if he pleaded guilty, that the court did not explain his constitutional rights, and that he did not know what "supervised release" meant, are belied by the court's statements and warnings, by movant's own statements at his rearraignment hearing, and by the factual resume that movant sponsored and signed.  At movant's rearraignment hearing, the court explained that only the court would determine movant's punishment, and that movant could receive penalties including ten years in prison, a fine of $10,000.00, and a three-year term of supervised release.  When asked if he understood that he was subjecting himself to those punishments, movant replied, "Yes, sir."  Id. at 16.  Movant also testified that no one had made any promise or assurance to movant of any kind in order to induce him

7

to plead guilty.  Id.   Movant signed his factual resume, which
specifically provided that movant could receive a ten-year term
of imprisonment and a three-year term of supervised release, and
movant testified that he had read the factual resume and
understood everything in it.

The court explained movant's constitutional rights at the
hearing, including the right to plead not guilty, to have a
speedy and public trial, to confront witnesses, to have the
assistance of an attorney at all stages of the proceedings, to
testify or not testify, to have the government prove his guilt
beyond a reasonable doubt, and to appeal a conviction.  Tr. at 3-
4.  The court also explained that movant would not be permitted
to withdraw his guilty plea if he received a sentence that was
longer than he had hoped.  When asked by the court if he
understood those rights, movant replied, "Yes, sir."  Id. at 4.
Movant also assured the court that he was fully competent to
enter a guilty plea, that he was of sound mind, that he knew what
he was doing, and that he was not suffering from any kind of
emotional or mental disability.  Id. at 11-12.  Movant's self-
serving and unsupported allegations thus are insufficient to
overcome the strong presumption of truthfulness accorded to his
statements under oath at his rearraignment hearing and in his
signed factual resume, and there is nothing to indicate that

8

movant's plea was anything but knowing, voluntary, and intelligent.

C.    Claim of Prosecution's Failure to Disclose Evidence

Movant next claims that the government failed to disclose favorable evidence regarding the information movant provided about Sutton, to movant or to the court at movant's sentencing hearing. When challenging the government's failure to disclose allegedly favorable evidence, a prisoner must show that the prosecution suppressed evidence that was also material. United States v. Infante, 404 F.3d 376, 386 (5th Cir. 2005). For evidence to be considered material, movant must show that if the evidence had been disclosed, there is a reasonable probability that the outcome of the proceedings would have been different. United States v. Bagley, 473 U.S. 667, 682 (1985). Thus, in this case, movant would have to show that the disclosure of his payment of $20,000.00 to get a confession from Sutton would have likely caused the court to give him a shorter sentence.

First, movant provides nothing to substantiate the claim that anyone from the government promised him assistance in the sentencing process, and the record contains no support for movant's contention that there were any such promises. For example, there was no plea agreement or any other kind of document indicating that any promise to move for a sentence

reduction existed.  Second, even if such a promise had existed and the court was aware of it, or the government moved for a reduced sentence, movant cannot show that there is any probability that the court would have given him a lighter sentence.  The court had explained that movant was already receiving a shorter sentence than what his conduct merited, by virtue of the statutory cap.  There is no reasonable probability that the court would have sentenced movant below the statutory maximum simply because movant paid another inmate for a confession and provided the information to authorities.  Accordingly, this claim fails.

D.   Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, movant must show (1) that her counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for her counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984).  Both prongs of the Strickland test must be met to demonstrate ineffective assistance.  Id. at 697.  Further, "[a] court need not address both components of an ineffective assistance of counsel claim if the movant makes an insufficient showing on one."  United States v. Stewart, 207 F.3d 750, 751 (5th Cir. 2000).  "The likelihood

of a different result must be substantial, not just conceivable,"
Harrington v. Richter, 131 S. Ct. 770, 792 (2011), and a movant
must prove that counsel's errors "so undermined the proper
functioning of the adversarial process that the trial cannot be
relied on as having produced a just result." Cullen v.
Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Strickland, 466
U.S. at 686)). Judicial scrutiny of this type of claim must be
highly deferential and the defendant must overcome a strong
presumption that his counsel's conduct falls within the wide
range of reasonable professional assistance. Strickland, 466
U.S. at 689.

In both his motion and his memorandum, movant lists numerous
and scattered complaints about his attorney's performance at all
stages of his trial proceedings: (1) failure to object to
movant's sentence as unreasonable and disparate; (2) failure to
obtain a psychiatric evaluation of movant; (3) failure to take
action regarding officers' alleged failure to read movant his
Miranda rights when they searched his home; (4) failure to
negotiate a plea agreement; (5) failure to inform the court that
movant had provided substantial assistance to the government; (6)
failure to call witnesses to testify in support of movant and
failure to seek a continuance to secure the favorable witnesses;
(7) failure to impeach testimony of movant's ex-wife and correct

11

the testimony of movant's divorce attorney; (8) failure to bring
movant's file to sentencing; (9) failure to timely ask movant for
his objections to the presentence report; (10) failure to provide
a letter to the court; and (11) asking movant to sign an
erroneous factual resume. Most of movant's arguments center
around his contention that he intentionally disabled the bomb
that he left on his ex-wife's porch so that it would not actually
harm her, and his contention that he should have received a lower
sentence because of the information he provided about Sutton.
None of these claims has merit, as movant cannot satisfy the
prongs of Strickland.

    1.   Failure to Object to Movant's Sentence

Movant faults his attorney for failing to object to movant's
sentence as unreasonable and disparate, claiming that, based on
movant's "actual culpability" and intentional disabling of the
bomb, movant should have received a sentence of only three years
in prison. Memo. at 23-24. Movant argues that his attorney
failed to bring necessary case law to the court's attention and
was silent "on the issues of un-proportional disparity." Id.
Movant raised this issue in his direct appeal, arguing that his
sentence constituted "an unwarranted disparity," but failed to
provide any evidence to support his claim, and also fails to
provide evidence now. Barouch, 464 F. App'x at 256. The Fifth

Circuit held that movant's sentence was within the guideline range and presumed reasonable, and that movant had failed to rebut the presumption.  Movant fails to rebut this presumption in his § 2255 motion as well, and fails to explain exactly what objection his attorney could have made that could have persuaded the court that a 120-month guideline sentence was unreasonable for an individual who built a bomb and left it on his ex-wife's front porch intending to seriously injure or kill her.  The court already had determined that the statutory maximum that movant received was inadequate to appropriately address movant's conduct, and there was no indication that the court would have considered a lower sentence as a result of any kind of objection.  Such an objection would have been completely frivolous, and the failure to make a frivolous objection does not constitute ineffective assistance of counsel.  Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").  Thus, movant's contention that his attorney should have objected to his sentence must fail.

    2.   <u>Failure to Obtain a Psychiatric Evaluation of Movant</u>

Movant next complains that his attorney did not submit him for a psychiatric evaluation that was "relevant to the defense of diminished capacity and/or aberrant conduct."  Memo. at 9.

Movant argues that he was suffering from mental illness and was not in a proper state of mind, which he believes should have been presented as mitigating evidence at his sentencing hearing. However, movant's contentions regarding mental illness and diminished capacity are contradicted by movant's testimony at his rearraignment hearing and by movant's own actions. At the hearing, the court asked movant under oath if he suffered from "any kind of emotional or mental disability or problem," to which movant replied, "No, sir." Tr. at 11. The court further asked movant if he considered himself "of sound mind," to which movant replied, "Yes, sir." Id. at 11-12. Movant claims that he was under significant stress at the time he built the bomb, but admitted that he spent approximately one year contemplating, researching, and finally building it. He also took the time, thought, and calculation in constructing the intricately designed bomb and delivering to his ex-wife's home when he knew she was the only one at the residence. Such testimony and actions hardly indicate that movant was suffering from diminished capacity or mental illness that could in any way have caused the court to consider shortening movant's sentence.

   3.   Miranda Warning

   Movant contends that he was not read his Miranda rights when officers arrived to execute a search warrant at his home and

14

discovered evidence showing that movant had constructed the bomb, and that his attorney was deficient for telling movant that it was not important.  However, movant had not been arrested or placed into custody at the time the officers questioned him, and "Miranda warnings must be administered prior to 'custodial interrogation.'"  United States v. Cavazos, 668 F.3d 190, 193 (5th Cir. 2012) (quoting United States v. Bengivenga, 845 F.2d 593, 595 (5th Cir. 1988)).  In addition, the record indicates that "[f]ollowing his arrest, [movant] declined to be interviewed by case agents."  Presentence Report, at 4, ¶ 15.  Thus, there is nothing to indicate that movant's attorney was deficient for dismissing movant's protests regarding his Miranda warnings.

　　　4.　Failure to Negotiate a Plea Agreement

　　　Movant complains that his attorney "made no attempt to negotiate or receive a plea agreement" despite movant's request that he do so, contending that movant had knowledge of a corporation committing real estate crimes.  Mot. at 9; Ex. 1, at ¶¶ 13, 64.  He alleges that his attorney informed him that the government was not interested, he appears to argue that his attorney never mentioned the information to the government, and never made any kind of record or documentation showing he had spoken with the government on this matter.

In the context of a plea agreement, movant must show that:

> [B]ut for the ineffective advice of counsel there is a
> reasonable probability that the plea offer would have
> been presented to the court (i.e., that the defendant
> would have accepted the plea and the prosecution would
> not have withdrawn it in light of intervening
> circumstances), that the court would have accepted its
> terms, and that the conviction or sentence, or both,
> under the offer's terms would have been less severe
> than under the judgment and sentence that in fact were
> imposed.

Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012).  In this case,

movant's claim clearly fails, as he cannot show that, even if his

attorney negotiated a plea agreement, that the court would have

accepted it or even considered a sentence below the 120-month

sentence movant received.  As discussed above, the court had

already determined that movant was receiving an extraordinary

benefit in the length of his sentence because of the statutory

cap, and the court would not have been inclined to consider a

more lenient sentence.

5.   Failure to Inform the Court that Movant Provided
     Substantial Assistance to the Government

Movant next contends that his attorney was ineffective for

failing to inform the court that movant had paid $20,000.00 to

obtain Sutton's murder confession and had provided the confession

and details surrounding it to an ATF agent, and failing to inform

the court that the government had agreed to seek a reduction in

movant's sentence pursuant to § 5K1.1 of the United States

16

Sentencing Guidelines.   However, movant fails to show that his attorney was deficient or that it would have made any difference in the outcome of the proceedings if his attorney had told the court about movant's actions.   From movant's own description, his attorney believed that the court would not approve of movant's conduct in obtaining a confession for money, and thought it a better, and reasonable, strategy not to mention such conduct to the court.   Once again, in light of the court's conclusion that the maximum sentence was already too lenient for movant, there is no reasonable probability that the outcome of the proceedings would have been different.

      6.   <u>Failure to Call Favorable Witnesses and Failure to Seek Continuance to Secure Favorable Witnesses</u>

Movant's next grievance relates to his attorney's failure to call an expert witness who would support movant's theory that he intentionally disabled the bomb, failure to call other witnesses he claims would have provided mitigating testimony, and failure to seek a continuance to secure the testimony of the witnesses. He contends that an expert witness could have testified that the filament in the bomb could not have broken by itself, supporting movant's argument that he intentionally broke the filament and disabled the bomb.   Movant also argues that Agent Riddle, the ATF agent to whom movant provided Sutton's confession, would have

testified about movant's substantial assistance.  Movant further
complains that he wanted his therapist to testify about his
psychological problems, and three prior girlfriends to testify
about his non-violent nature.

"Because deciding whether to call witnesses is a strategic
trial decision, this Court has held that complaints of uncalled
witness are 'disfavored' as a source of Strickland habeas
review." United States v. Harris, 408 F.3d 186, 190 (5th Cir.
2005).  "Complaints of uncalled witnesses are not favored in
federal habeas corpus review because allegations of what a
witness would have testified are largely speculative." Sayre v.
Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001) (citing additional
cases).  For movant to meet the burden of Strickland, he must
show "not only that this testimony would have been favorable, but
also that the witness would have testified at trial," and that
there was a reasonable probability that the testimony would have
altered the outcome of the proceedings. Alexander v. McCotter,
775 F.2d 595, 602 (5th Cir. 1985).  For expert witnesses, movant
must present reliable evidence establishing what the expert would
have said, and what the results of any scientific tests or
analyses would have proven. Evans v. Cockrell, 285 F.3d 370, 377
(5th Cir. 2002).  Further, "Where the only evidence of a missing
witnesses' testimony is from the defendant, this Court views

claims of ineffective assistance with great caution." <u>Sayre v.</u>
<u>Anderson</u>, 238 F.3d 631, 636 (5th Cir. 2001) (citing multiple
cases).

Movant cannot show that it was unreasonable for his attorney
not to have called the expert witness, Agent Riddle, movant's
therapist, or movant's girlfriends. Movant's speculation that
the expert would have testified that movant must have disabled
the bomb is conclusory, self-serving, and unsupported by any
evidence. The record reflects that movant's own expert provided
"no opinion on how the bomb's initiator was disabled," <u>Barouch</u>,
464 F. App'x at 256, and had concluded in his report that the
bomb was powerful enough to cause death or serious injury. The
ATF's expert conclusion, which was incorporated into movant's
presentence report, explained that it was unknown how the
filament had broken, that there were various ways it could have
broken, and that it was implausible that movant had broken the
filament himself. Movant provides nothing other than his own
self-serving assertions to attempt to disprove the expert
conclusions and the court's conclusion that he intended for the
bomb to harm his wife and did not disable it by breaking the
filament.

As to movant's assertion that Agent Riddle would have
testified that movant provided substantial assistance, such an

assertion is also speculative and unsupported by any evidence in the record.  As discussed <u>supra</u>, section III.B, even if Agent Riddle described movant's cooperation or stated that he agreed to move for a sentencing reduction, there is no reasonable probability that the court would have shortened movant's sentence, as the court emphasized that movant's statutory maximum was already shorter than what an appropriate sentence would have been.

Finally, movant complains that his psychologist was not called as a witness to discuss movant's mental state and his girlfriends were not called to testify about his character. Movant believes his therapist could have testified that movant was under heavy stress at the time he made the bomb, and that he just "snapped" when he built it and placed it on his ex-wife's porch.  However, as described <u>supra</u>, section III.D.2, movant spent approximately a year contemplating, researching, and building the bomb.  The speculation that a therapist could testify that movant was stressed due to the contentious divorce issues does not persuade the court that movant would have had any reasonable probability of receiving a shorter sentence, nor does the speculation that movant's girlfriends may have testified that he was not violent.  Movant is unable to satisfy the <u>Strickland</u> burden as to his complaints about uncalled witnesses, and,

therefore, his complaint that his attorney failed to seek a third continuance[3] to secure all witnesses also fails.

### 7.   Failure to Impeach the Testimony of Movant's Ex-Wife and Correct the Testimony of Movant's Divorce Attorney

Movant next faults his attorney for failing to impeach statements given by movant's ex-wife at the sentencing hearing and failing to cross-examine movant's ex-wife, failing to subpoena emails that his ex-wife alleged he sent, and failing to correct errors in the testimony of movant's divorce attorney.

First, movant's ex-wife was not a witness and did not provide testimony at movant's sentencing, but was giving a victim's statement pursuant to 18 U.S.C. § 3771(a)(4), which provides that a crime victim has "[t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding," and pursuant to Rule 32(i)(4)(B) of the Federal Rules of Criminal Procedure, which provides, "Before imposing sentence, the court must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard." The victim thus has the right to make a statement at sentencing about the

---

[3] Movant's attorney filed a motion for continuance of sentencing because an expert witness was unavailable on the first sentencing date. That motion for continuance was granted, but the witness later became unavailable on the new sentencing date. Movant's counsel filed a second motion for continuance, which the court denied.

effect the defendant's criminal conduct had on her without being cross-examined or placed under oath, just as a defendant has the right to make whatever statement he wants in mitigation.  See United States v. Castillo, 476 F. App'x 774 (5th Cir. 2012). Thus, it was not unreasonable for movant's attorney not to cross-examine or attempt to impeach movant's ex-wife.

Next, movant fails to present any evidence that he or his attorney could have secured any alleged emails, and even if they had, such emails would have had no effect on the sentence movant received.  He was sentenced for the criminal conduct of building a bomb and placing it on his ex-wife's porch, not for allegedly sending threatening emails.

Finally, movant complains that his attorney did not adequately prepare his divorce attorney for testifying, and did not clarify errors in her testimony.  The alleged errors consisted of her statement that there was not a mediation scheduled for movant and his ex-wife, and her statement that movant was behind on his child support obligation.  Regardless of whether her statements were correct, the record reflects that the divorce attorney's testimony had little, if any, bearing on the outcome of the proceedings.  The court concluded that movant himself lacked credibility, that his story was simply too implausible for anyone to believe, and that "the contention that

[movant] didn't intend to -- for that bomb to cause serious injury to his wife, in fact, to cause her death, is -- would be irrational to even think that he didn't [i]ntend it."  Sentencing Tr. at 34.  Thus, this claim must fail.

### 8.   Movant's File

Movant complains that his attorney failed to bring his file with him to movant's sentencing, and that his attorney had to look at the prosecution's paperwork at sentencing.  However, movant fails to explain how the lack of his file's presence at sentencing actually affected the outcome of his case.  There is no indication whatsoever that, had movant's attorney remembered the file, movant would have received a shorter sentence.

### 9.   Failure to Timely Ask Movant for Objections to Presentence Report

Movant complains that his attorney did not ask movant for his objections to the presentence report until after the deadline for submitting such objections had passed.  Again, there is no indication that this circumstance prejudiced movant in any way. Movant was still able to present all of his objections, and the court ruled on such objections on the merits, without considering when they were filed.

10.  <u>Letter to the Court</u>

Movant asserts that he gave his attorney a letter to forward to the court regarding movant's mental state when he placed the bomb on the porch, and that his attorney never gave the letter to the court. Once again, movant provides nothing to show prejudice. He was able to testify in court as to his mental state and bomb placement, and there is no indication that a letter would have provided any information the court did not already have.

11.  <u>Factual Resume</u>

Movant contends that his attorney asked him to sign a factual resume that stated that the bomb was in operating condition when movant delivered it to the porch, and claims that his attorney advised him to lie and tell the court that he had not disabled the fuse. However, movant's assertions are again contradicted by the record, which reflects that when the factual resume was presented to the court, the words "was in operating condition" were marked out and initialed by movant's attorney, which did not preclude movant from arguing that he had intentionally disabled the bomb and did not intend to harm his ex-wife. Factual Resume; Rearraignment Tr. at 18-19.

IV.

<u>Order</u>

Therefore,

The court ORDERS that the motion of David Barouch to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be, and is hereby, denied.

The court further ORDERS that movant's motion to admit exhibits A, B, B1, C, D, and D1, be, and is hereby, granted inasmuch as the court has considered such exhibits in its analysis of movant's § 2255 motion.

The court further ORDERS that movant's motion for evidentiary hearing, motion for discovery, and motion to appoint counsel, be, and are hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, and 28 U.S.C. § 2253(c)(2), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as movant has not made a substantial showing of the denial of a constitutional right.

SIGNED May 17, 2013.

_____
JOHN McBRYDE
United States District Judge

25